UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE MANYANGA-MPINGUYABU,<br><br>                     Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE; DANIEL BRIGHTMAN; TODD LYONS; Acting Secretary of the Department of Homeland Security; PAMELA BONDI; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>                 Respondents. | Case No.: 26-cv-1460-JES-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Andre Manyanga-Mpinguyabu's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. On March 16, Petitioner filed a traverse, and Respondents filed a return. ECF Nos. 3, 4. For the reasons set forth below, the Court **GRANTS** the petition.

## I.      GOVERNMENT'S LACK OF RESPONSE

As a threshold issue, before reaching the merits of the claims, the Court finds it important to highlight Respondents' lack of response in this matter.  Upon receipt of the petition, the Court issued an Order to Show Cause, ordering Respondents to file a return to

the petition by March 12, 2016.  Respondents failed to do so.  Days later, Petitioner filed a traverse, noting the lack of response.  ECF No. 3.  Only after this filing did Respondents finally respond to the petition. ECF No. 4.  The return simply stated:

> Upon careful review of the Petition, Respondents hereby submit their Notice of Non-Opposition in this matter. This Court issued a briefing schedule in this matter on March 9, 2026. ECF No. 2. Petitioner filed a Traverse on March 16, 2026, forecasting arguments based on prior briefing submitted by Respondents in other cases. Thus, Respondents file this formal notice.

ECF No. 4.  Nowhere in the response did Respondents mention their own deadline, or why they failed to respond on that date.  The Court notes that this exact situation has also happened in another habeas petition just this week before the undersigned.  *See Murillo-Ortiz v. LaRose*, Case No. 26-cv-1469-JES-BJW.  Further, in a situation where the Court is ordering immediate release of the Petitioner as here, this delay has real and material consequences for Petitioner.  The Court will not take any further action in this instance but cautions Respondents that it expects its deadlines to be strictly adhered to and further failures may result in sanctions or other consequences.

## II.     BACKGROUND

Petitioner, a native of the Democratic Republic of Congo ("DRC"), entered the United States on May 14, 2022, in order to seek asylum. ECF No. 1 ¶ 1. Petitioner was granted conditional parole under the Alternatives to Detention ("ATD) program on May 15, 2022. ECF No. 1-3; ECF No. 1-4 at 3.  The document states that the parole expired on July 14, 2022.  ECF No. 1-3.  Petitioner does not appear to have been placed into removal proceedings at that time.  ECF No. 1-4 at 3.

Since his parole, Petitioner has resided within the United States.  He filed for asylum on March 13, 2023.  *Id.*  He also received work authorization. ECF No. 1 ¶ 44.  He appears to have been employed at a baker at a bakery in Maine.  ECF No. 1-4 at 4.  He asserts that he complied with all the terms of his release.  ECF No. 1 ¶ 2.

On May 14, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") officers on his way to work.  ECF No. 1 ¶ 45.  At that time, Petitioner

26-cv-1460-JES-SBC

alleges that he was not told why he was being detained or provided any warrant or other notice. *Id.* ¶¶ 46-47. He is now being detained at the Otay Mesa Detention Center. *Id.* ¶ 47.

### III.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### IV.   DISCUSSION

In his petition, Petitioner argues that his re-detention and the manner under which it was carried out violates the Administrative Procedure Act ("APA"), procedural due process, and the Fourth Amendment, and requests release from custody. ECF No. 1 ¶¶ 52-72. Respondents' submission is a non-opposition. ECF No. 4. Nevertheless, the Court addresses the merits of the due process claim to find that release is proper.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—

26-cv-1460-JES-SBC

lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.*

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then

> released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi*, 792 F. Supp. 3d 1025, 1034-35 (N.D. Cal. 2025).

In this case, Petitioner was released on conditional parole under ATD. ATD is a program that was "designed 'to provide supervised release and enhanced monitoring for a subset of foreign nationals subject to removal whom ICE has released into the United States.'" *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *6 (E.D. Cal. Aug. 28, 2025) (citation omitted). "These aliens are not statutorily mandated to be in DHS custody, are not considered threats to public safety or national security, and have been released either on bond, their own recognizance, or parole pending a decision on whether they should be removed from the United States." *Id.* (citation omitted).

Courts have consistently held that noncitizens who have been granted some form of parole with ATD have a protected interest in their liberty, cognizable under due process. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (finding that petitioner who was released subject to ATD conditions "undoubtedly" has an "established interest in his liberty"); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025) ("When an immigrant is placed into parole status after having been detained, a protected liberty interest may arise."); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *14 (E.D. Cal. Oct. 16, 2025) (similarly finding liberty interest). Courts have found such liberty interest even where violations of the ATD conditions have occurred, so such liberty interests are at "full force" where, as here, no violations of the conditions have been alleged

26-cv-1460-JES-SBC

against Petitioner. *See Herna v. Chestnut et al.*, No. 1:25-CV-01919-JLT-SAB (HC), 2026 WL 177801, at *4 n.2 (E.D. Cal. Jan. 22, 2026).

Here, it does appear that Petitioner's original parole grant expired in July 2022. However, courts within this Circuit have repeatedly held that liberty interests do not expire when parole does. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process." *Id.*; *see also Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) ("[P]etitioner's liberty interest did not expire along with his parole."). Thus, an expiration of parole does not automatically extinguish a due process claim. *See Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("That the express terms of Petitioner's parole allowed for discretionary termination or expiration does not somehow obviate the need for the government to provide an individualized hearing prior to re-detaining him given the significance of his liberty interest."); *Omer G. G,* 2025 WL 3254999, at *5. And these liberty interests are particularly "weighty" where Petitioner relies on the government's grant of release to take actions to build a life in this country—as Petitioner has done here since 2022. *Ramirez Tesara*, 800 F. Supp. 3d at 1136; *Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("His interest in being free from confinement is particularly weighty, given his family and community ties within this country.").

Thus, the Court agrees with all the foregoing courts and similarly holds that Petitioner has procedural due process rights arising from his parole under ATD. Petitioner

26-cv-1460-JES-SBC

has stated that he received no notice when he was re-detained and given no opportunity to be heard. ECF No. 1 ¶¶ 46-47. Petitioner claims that he complied with the conditions of his release. *Id.* ¶ 2. Accordingly, the Court joins these courts and finds that Respondents violated Petitioner's due process rights when they re-detained him on May 14, 2025.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **March 24, 2026**, confirming that Petitioner has been released.

Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: March 19, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

26-cv-1460-JES-SBC